45  129
50e 175

JOHN CHURCH v. FLORENCE IRON WORKS.

1. A contract, in writing, for work may be waived by a substituted parol agreement subsequently made for a good consideration.   When the fact of such substituted agreement is undisputed in the trial evidence, the court should, on request, charge that the former contract is abrogated.

2. When no fixed sum for labor is named in a substituted contract for melting iron by the ton, at a reduced price, the acceptance of bi-monthly payments by the contractor for himself and workmen, at a certain gross amount per ton, without objection or demand for more, until the contract is ended, is such admission that the receiptor is precluded by it from demanding the former contract price.

On error to Burlington Circuit Court.

An agreement, in writing, was made July 19th, 1875, between the plaintiff and defendants, by which the plaintiff agreed to do the melting of all iron at the foundry of the defendants, who were manufacturers of iron pipe at Florence,

for the period of at least one year from the date thereof, said Church to furnish all the help required to do the same at his own expense, for the consideration of forty cents per ton of twenty-two hundred and forty pounds for all good pipes and castings produced or made. The men working for Church to be under the control and subject to the rules and orders of said company, and to be paid by them out of the wages of the said Church, same as other gangs in their employ. (This agreement to be in force from year to year, unless notice be given by either party one month previous to the ending of any year of this agreement.) The iron and coal to be delivered to said Church upon the scaffold at the cupolas. All the other expenses in melting to be borne by said Church. The agreement to be in force July 20th, 1875.

The facts testified to by the plaintiff and William E. Thatcher, the manager of the Florence Iron Works, without contradiction, are that Church continued to work under the contract at forty cents per ton up to about Christmas, 1876, when the mill stopped. The work was commenced again February 18th or 19th, 1877. Two or three days before the work was resumed, Thatcher told Church that there would be a reduction, and asked him to agree to it; he said he would not object to a small reduction, but did not want a big one, as he had been idle all winter, and Thatcher agreed to make it as small as possible. The amount of reduction was named. The plaintiff did not decline to work unless he received forty cents per ton. The reduction was first made from forty cents to twenty-eight cents a ton. After three payments Church objected to the amount received, twenty-eight cents per ton, and was paid at the fourth payment thirty cents per ton, including the three past payments, and received at that rate to July 31st, 1877. From that time Church continued to work in melting iron for the company on a guaranty of $20 per week and as much more as he earned, until May 2d, 1878, when he left. From February 18th, 1877, the wages of all the men were reduced ten or fifteen per cent., and Church received the several payments

of thirty cents per ton without protest or demand of the additional ten cents per ton, and made no demand for the same until after he had left, when he claimed the amount of ten cents per ton from March 5th, 1877, to July 31st, 1877, when the new guaranty arrangement was made. This amounted, by his estimate, to $412.22, while Thatcher testifies that the correct amount would be $317, if he were entitled to it. For this alleged balance the suit was brought, and the verdict was for the sum of $317.51, and interest.

Argued at November Term, 1882, before Justices SCUDDER and MAGIE.

For the plaintiff, *Mark R. Sooy.*

For the defendants, *J. H. Gaskill* and *B. Gummere.*

The opinion of the court was delivered by

SCUDDER, J. Several errors are assigned by the defendants, which will be considered. The first, that the court refused to non-suit the plaintiff at the close of his evidence, does not appear in the case, which says that the defendants were to have the benefit of a motion to non-suit at the close of the case in the judge's charge. Whatever this may mean, it does not show a distinct motion to non-suit at the close of the plaintiff's evidence, which was refused, and exception taken and sealed.

The principal errors assigned are, first, that in the charge it was said that the agreement for forty cents per ton was in force from February, 1877, to July 20th, 1877, and unless the parties made some other agreement the plaintiff was entitled to receive forty cents per ton for that time, unless it was shown that both parties agreed upon some less sum. It was thus left to the jury to find against the defendants at the rate of forty cents per ton, unless they showed that a less sum had been agreed upon; whereas the evidence on both sides proved that in February, 1877, before the work was re-

sumed, the defendants demanded and the plaintiff acceded to a reduction from the contract price. It was not necessary that any certain amount should be agreed upon, and the plaintiff began the work under a new agreement for a small reduction from the original price. There was a good consideration in the resumption of work after it had been stopped for want of orders, and because there had been a reduction in other foundries. The jury should not have been left to find, as they did, that the contract price of forty cents per ton, without reduction, might be given by them. Even where a contract for work is under seal, as this was not, it may be waived by a parol agreement, more especially if the parol agreement be executed. *Monroe* v. *Perkins,* 9 *Pick.* 298. This is so where, by the parol agreement, the plaintiff was to receive a reasonable compensation, and not any fixed sum agreed upon, instead of the amount named in the former contract. As the reduction of price was undisputed, it was error to leave this as an open question of fact for the jury.

There is error also in the refusal to charge as requested, that the payment by defendants regularly of wages at the reduced rate of thirty cents per ton, and the acceptance of the same by the plaintiff without protest or demand for a larger sum, is such a fact as to warrant the jury in finding that he recognized the new arrangement as the existing agreement between him and the defendants. It was not only a strong circumstance which the jury might consider with the other evidence in the case, upon the question whether the plaintiff made a new agreement, but it was a conclusive fact that the sum of thirty cents per ton had been fixed and agreed upon for the reduction to which the plaintiff had assented. He objected to the first reduction to twenty-eight cents per ton, but when the amount was increased to thirty cents per ton he made no objection, but accepted it in bi-monthly payments until the contract was again changed, and made no demand for more until after he had left the employment of the defendants. The wages of the men had been reduced fifteen per cent. when work was resumed under the new agreement, and if the

former terms of forty cents per ton were continued the plaintiff would receive the benefit of this reduction of his men's wages, which would amount to $127.85 during the time for which he claims the first contract price. His silence and acquiescence in these payments prejudiced the defendants, and inured to his profit, if he was afterwards allowed to recover under his original contract after the substituted contract had been executed. Such acquiescence by an agent or employe has been held to estop him to deny that it was the contract under which he acted. *Stagg* v. *Insurance Co.*, 10 *Wall.* 589 ; *Love* v. *Jersey City*, 11 *Vroom* 456. It is within the principle of the leading cases of *Pickard* v. *Sears*, 6 *Ad. & E.* 469, and *Freeman* v. *Cooke*, 2 *Exch.* 654, that "where one, by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." This familiar principle is further illustrated and defined in *Baker* v. *Union Mutual Life Ins. Co.*, 43 *N. Y.* 283 ; *Knights* v. *Wiffen*, *L. R.*, 5 *Q. B.* 660 ; *Andrews* v. *Lyons*, 11 *Allen* 349.

But more apposite to the present case is the statement of the law made by Cowen, J., in *Dezell* v. *Odell*, 3 *Hill* 215, where there was a clear case of an admission by a party intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. "This," he says, "I understand to be the very definition of an estoppel *in pais.*" For the prevention of fraud the law holds the admission to be conclusive. If, in this case, the plaintiff had refused to accept the thirty cents per ton when offered him, the defendants might have declined to go on with the work of making iron pipes in competition with other foundries that had reduced their rates, or made some other arrangement. In the absence of any proof of fraud or deception to induce him to accept these payments, the plaintiff cannot repudiate

the terms to which he has thus assented and demand the larger sum named in his first contract.

For these reasons, which are the principal questions raised by the exceptions, the judgment will be reversed.