Joseph W. Spaulding *vs.* New York Life Insurance Co.

*Agents of life insurance companies—compensation of.   Contract—construction of.*

The rules of an insurance company provided that agents should receive a commission of "five per cent on each renewal collected and transmitted by them." *Held*, that the plaintiff, whose agency of such company had terminated, was not afterwards entitled to this commission on policies procured by him while he was agent, the collection and remittance of the renewals not having been made by him, and no custom to pay such commission after the termination of the agency being shown.

On report.

Assumpsit on account annexed for $74.18, commissions on renewals of insurance policies from July 3, 1870, to September 18th of the same year. On the 27th day of July, 1866, the plaintiff received an appointment as agent of the defendant company. The agency was terminated on the first day of July, 1870, and the plaintiff brings this action to recover for commissions upon renewals paid after the termination of his agency upon policies pro-

cured by him while acting as agent. The plaintiff did not collect nor remit the premiums upon which he seeks to recover commissions.

Among the rules of the company are the following :

" 10. The commission to agents is 10 per cent on first year's premium and 5 per cent on each renewal collected and remitted by them. This applies to business procured by the agent under this appointment. Upon the collection of other premiums (the risk being originally obtained by other parties) and upon interest, the commission is $2\frac{1}{2}$ per cent. . . ."

" 21. This appointment is revocable at the pleasure of the company, and can be terminated in like manner by the agent."

J. R. Dean, a witness called by the plaintiff, testified that he was General Agent of the Continental Life Insurance Co. ; that so far as he knew it was the usual custom, if agents receive a commission upon premiums after the first year, they receive it ever after, as long as the renewals are paid, unless they are discharged for misconduct.

M. L. Stevens, also called by the plaintiff, testified that he was General Agent of the North American Life Insurance Co.; that in all general contracts it was understood that a commission upon future premiums was a part of the compensation for doing the work, and that so far as his knowledge, observation, and experience went, agents had always received that renewal commission as long as the policies were in existence.

Wm. H. Beers, Vice-president and Actuary of the defendant company, stated in his deposition that agents were to receive five per cent for collecting and remitting renewals only during the continuance of the agency.

The defendant corporation agreed to a default, which was to stand, and plaintiff to have judgment for the amount of his bill, if the action was maintainable ; otherwise, the default to be taken off and the plaintiff to become nonsuit.

*T. B. Reed*, for the plaintiff.

*Tallman & Larrabee*, for the defendant.

APPLETON, C. J. This action is brought to recover commissions on premiums, paid after the plaintiff ceased to be an agent of the defendant company, for renewals of policies, issued by his procurement, while he was such agent.

Among the rules adopted by the company was the following, which was in force when the plaintiff received his appointment as agent: "Rule 21. This appointment is revocable at the pleasure of the company, and can be terminated in like manner by the agent."

As the agency thus created may be terminated at the pleasure of either party, there can be no reason for complaint whenever it is so terminated. The tenure by which it is holden is uncertain and so recognized. Once terminated, the relation of principal and agent is at an end. The duties and the authority of the agent cease.

The plaintiff, notwithstanding he has ceased to be an agent, claims to recover a percentage on renewals of policies, procured by him when agent, by virtue of the following rule, which fixes the compensation of agents: " The commission to agents is 10 per cent on first year's premium and 5 per cent on each renewal collected and transmitted by them. This applies to business procured by the agent under this appointment. Upon the collection of other premiums (the risk being originally obtained by other parties) and upon interest, the commission is $2\frac{1}{2}$ per cent."

The compensation on renewals is for services rendered. It is due " on each renewal when collected and transmitted," and then only by the terms of the rule. The agent has no right to his commission save on collection and transmission of the premium. The terms of the rule imply the continuance of the agency. When one ceases to be agent he cannot rightfully collect, and can have nothing to transmit.

The next sentence provides for the collection and transmission of premiums collected by an agent other than the one originally procuring the policies, and it gives such agent two and a half per cent commissions.

If one who is no longer an agent can have his commissions on premiums collected and transmitted by another, then the company must pay a commission of two and a half per cent to the agent collecting and transmitting funds, and five per cent to one who has ceased to be agent and who has neither collected nor transmitted funds.

There can be no mistake as to the meaning of the rule. It allows commissions only to the agent collecting and transmitting premiums paid on renewals, giving to the person procuring the original policy a premium twice as large as that to any other agent by whom premiums are collected.

The evidence entirely fails in showing any custom by which the defendants can be bound. Other insurance companies, with other rules, may have made such an allowance as the plaintiff claims, but that would not affect the defendants. Indeed, no proof is shown of the existence or recognition of any such custom as the plaintiff sets up, on the part of the defendant corporation. On the contrary, Mr. Beers, their actuary, testifies that there was no such custom. The defendant corporation cannot, most assuredly, be bound by the customs of other insurance companies. Certainly not, when those customs are not recognized by it and are in the very teeth of its own rules.      *Default taken off.*

*Plaintiff nonsuit.*

CUTTING, WALTON, BARROWS, DANFORTH, and PETERS, JJ., concurred.

DICKERSON, J., did not concur, and gave his opinion as follows: This action is brought to recover commissions on premiums paid after the plaintiff ceased to be agent of the defendant company, for renewals of policies issued by his procurement while he was their agent.

The decision of the case depends upon the construction to be given to the following rule of the company, fixing the compensation of agents: "The commission to agents is ten per cent on first year's premium, and five per cent on each renewal collected and

remitted by them. This applies to business procured by the agent under this appointment." Does the right of the agent, under this rule, to commissions on renewals of policies issued by his procurement cease when his agency is terminated, or does it continue after such termination and so long as such renewals are effected?

This rule is to be construed with reference to the subject-matter of the agency, the inducements of the parties to enter into the contract, and the respective interests to be subserved. The business to be engaged in was life insurance, which from its very nature is continuous, extending over an indefinite series of years, and involving numerous unforeseen contingencies. A policy once issued may be renewed fifty times, or not at all; whether it be the one or the other depends, among other things, oftentimes, not a little upon the intelligence, energy, integrity, and address of the agent through whose procurement the policy was originally issued, and under whose special charge the business continues; for these qualifications in an agent are not only necessary to enable him to succeed in inducing persons to become insured, but also in retaining the assured, by keeping them advised of the transactions and standing of the company he represents, and of the general practicability, the advantages, and, it may be, the duty of renewing their insurance.

The value to the company of the services of an agent consists both in the number and amount of the policies he is able to cause to be underwritten, and in the number and continuity of the renewals. The value of the agency to the agent depends upon the same considerations. Indeed, his continuous interest in the renewals is the chief inducement for him to accept the agency. These identical and mutual advantages may fairly be presumed to have been contemplated by both principal and agent when they agreed upon the contract of agency. The rate of compensation agreed upon confirms this view of the contract; agents were to have commissions on renewals as well as on original policies. If the agent was not to receive any compensation for renewals, he would not have the motive to procure substantial and continuous-

ly-paying persons to become insured that he would if he had an interest in the renewals, and the company would derive correspondingly less benefit from his services.

So, if the agent were entitled to commissions on renewals, and, at the same time, liable to lose his agency at the caprice of the company, without fault on his part, and with that to loose, also, his claim for commissions on renewals, the same result would follow.

As, in general, life policies lapse upon non-payment of the annual premiums, the assured are interested in making such payments promptly. Hence, the business of collecting and remitting those sums occupies but little time, and requires but little effort. The five per cent commissions on renewals may thus be regarded, not only as compensation for such services, but also as part payment for the more laborious and difficult work of soliciting customers and procuring the policies to be issued, which is so inadequately and disproportionately remunerated by the commissions allotted for such service. The defendants recognize this principle in their rule establishing the compensation of agents, which allows agents double the amount of commissions on renewals of policies issued through their instrumentality that it does for the same service in respect to policies procured by other agents. This extra allowance is undoubtedly intended as a part compensation for the previous service of soliciting and procuring persons to become insured. The plaintiff's claim, in fact, partakes of the nature of a claim for compensation for services rendered while he was the defendants' agent. By the contract between the parties the plaintiff was to have a *quasi* lien for commissions on the premiums paid for renewals of policies, issued through his agency, as a part of the compensation for his previous services. It is obvious that such a claim could not be defeated or impaired by a revocation of his authority as agent.

Taking, therefore, into consideration the nature of the business to be transacted, the interests to be subserved, and the inducements for the parties to enter into the contract of agency, I think that the plaintiff, under that contract, acquired a right to

commissions on the premiums paid for the renewal of all policies underwritten at his instance, and that this right attaches as well to premiums paid after as before the termination of his agency, it appearing that his authority ceased without any fault on his part, and that he has ever been ready and desirous "to collect and remit" such premiums to the defendants, less his commissions.

This view of the case is confirmed by the usage proved to exist among life insurance companies in such cases. The statute of 1870, c. 156, § 8, invoked by the defendants, cannot avail them. The plaintiff acquired his rights under a contract executed before that statute was passed, and it is not competent for the legislature to pass an act impairing pre-existing rights.