112    79
113·  602

## IRON  DUKE  MINE  v.  BRAASTAD.

1. MINING  LEASE—LIEN  FOR  ROYALTIES—WAIVER.
    A reservation in a mining lease of a lien on "all ore mined," to secure the payment of royalties, is not, as between the parties, waived or destroyed by a further provision contemplating that the ore will be shipped to the customary market in another State before payment of royalty.

2. SAME—SALE  BY  LESSEE—TORTS.
    A lessee of a mine, who disposes of ore in such a manner as to deprive the lessor of a lien for royalties expressly reserved to him by the lease, is liable to the latter in an action of tort.

Error to Marquette; Stone, J.   Submitted February 3, 1897.   Decided March 10, 1897.

Case by the Iron Duke Mine against Frederick Braastad for wrongfully depriving plaintiff of its lien for royalties under a mining lease.   From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

The declaration contains two counts,—one for trover, the other in case.   The second count sets forth the lease under which the royalty for iron ore mined was payable, and which provided a lien upon it to secure the royalty; that defendant wrongfully removed and disposed of the same without paying the royalty, and thereby deprived plaintiff of its lien.   Defendant is assignee of the lease, plaintiff being the lessor.   By its terms, the lessees agreed that they would, on the 20th days of April, July, October, and January in each year, pay for all the iron ore mined and removed from said land during the three months preceding the 1st day of the month in which payment was to be made, at the rate of 30 cents per ton for soft, and 40

cents per ton for hard, ore. The lease also contained the following provisions:

"It is understood that the party of the first part reserves, and shall at all times have, possess, and hold, a lien upon all ore mined, and all improvements made on said premises by the parties of the second part, as a security for any unpaid balances of money due under this contract, which lien may be enforced against such property in like manner as liens on like property are entitled to be enforced under the laws of the State of Michigan."

"The parties of the second part, at the time of such payment, shall transmit to the party of the first part an exact and truthful statement of the amount of iron ore removed during the three months for which such payment shall be made. The iron ore so taken by the parties of the second part from said land shall be weighed by the railroad company transporting the same from said land, which weights shall determine the quantity as between the parties hereto. Said parties of the second part shall furnish the party of the first part monthly statements showing the aforesaid weights, the right, however, being hereby conceded to the party of the first part to inspect, review, and test the correctness of said railway company's scales and weights at any time, and in such manner as it may see fit to adopt, it being understood that any error in these respects, when ascertained, shall be recognized and corrected in their accounts."

The defendant shipped the ore to Cleveland, Ohio, to his agents, by whom it was sold. Three shipments were made in June, 1894, and were sold in November and December of the same year. The total amount of the sales was $11,461.14, which was paid to defendant. The royalty amounted to $1,640.11. Soon after the ore was shipped, defendant's agents advanced to him $8,560.90. Defendant did not pay the royalty, and this suit was instituted to recover it, upon the theory that the defendant had wrongfully disposed of the ore without paying the royalty or preserving the lien, and was therefore liable in an action of tort. The court directed a verdict for the plaintiff.

*Hayden & Young*, for appellant

*Ball & Ball*, for appellee.

GRANT, J. *(after stating the facts).* The learned counsel for the defendant contend (1) that plaintiff had no lien upon the ore, and (2) that, if it had, it was waived, and that defendant committed no tort in disposing of it.

We deem it unnecessary to discuss the first point. The lease expressly provided for a lien upon "all ore mined," and was not confined to the ore mined and upon the premises when proceedings should be taken to recover the royalty and enforce the lien.

Is the lien waived by the terms of the lease or by the customary methods of sale? There is nothing in the lease inconsistent with the existence of the lien. It would be an anomalous instrument which created a lien as security, and then destroyed or waived it by providing for the shipment (to the usual market for sale) of the ore there mined. Defendant introduced evidence to show that Cleveland, Ohio, was the customary market for iron ore mined in the Marquette district; that, by the universal custom of the district, the iron ore was shipped from the mines to this market by railroad and lake vessels; and that the sales agents made advances thereon of the cost of transportation, and sometimes also upon the purchase price of the ore. If this was the universal custom, the lease was made with reference to that custom, and expressly provided for the lien. The custom, therefore, cannot annul the plain provisions of the contract. The permission to ship the ore for sale in the customary market in another State did not of itself destroy the lien. An innocent purchaser might take the property discharged of the lien, but this would not relieve the defendant from the consequences of his wrongful act in disposing of the property without preserving the lien or paying the roy-

alty. It was in his power, as it was his duty, to pay the royalty, or preserve the lien. · He could easily have accomplished this by directing his agents, in making the advance and the sale, to reserve the amount due for royalty, and pay the same to the plaintiff. Instead, he chose to take the entire purchase price, and refuse or neglect to pay. In so disposing of the ore, he, perhaps without intending any wrong, destroyed the lien, and committed an act for which he is responsible, under either count in the declaration.

The judgment is affirmed.

The other Justices concurred.