## HOUGHTON v. BRADLEY.

CONTRACTS—INSURANCE—AGENT'S COMMISSIONS—CUSTOM.
A custom in the life-insurance business to allow general agents a permanent interest in the insurance secured by them in the form of a percentage on the renewal premiums does not affect or modify the provision of a contract which expressly limits commissions on business secured by the agent to the continuance of the agency.

Cross-appeals from Wayne; Adams, J., presiding. Submitted June 9, 1897.   Decided July 13, 1897.

Bill by Spencer L. Houghton against Alonzo E. Bradley and the State Mutual Life Assurance Company for a partnership accounting. From the decree rendered, all parties appeal. Reversed.

*Jasper C. Gates*, for complainant.

*George W. Radford*, for defendants.

GRANT, J.   The issues involved in this case are succinctly stated in 110 Mich. 308. The case was then before us on demurrer to the bill. The defendants

answered, proofs were taken in open court, and decree entered for the complainant against the defendant Bradley for $1,338.95. The court found that the defendants terminated the agency of complainant arbitrarily and without just cause, and that complainant is entitled to future renewal commissions upon all premiums which fell due before July 1, 1897. It was decided in the former opinion that complainant and Bradley were partners. No period of duration was fixed in the articles of copartnership. It was conceded upon the hearing below that either party could terminate the partnership at will. It appears therefore to be immaterial, in the determination of the question involved, whether the partnership was terminated with or without just cause. If it were material to decide that question, we should reach a different conclusion from that found by the learned circuit judge.

For some reason, which we need not consider, complainant, for about two years before his discharge, had been a failure as an insurance solicitor. During the last six months of 1894 he had secured only $14,000 insurance, and in one month (August) did not secure a single policy. During the same time another solicitor, named Van Tuyl, had secured $149,000. During the first five months of 1895 complainant's record is as follows: January, nothing; February, $1,000; March, $4,000; April, $3,000; May, nothing. During these same months Mr. Van Tuyl had secured as follows: January, $19,500; February, $15,000; March, $27,000; April, nothing; May, $33,500. And during these same months Mr. Bradley, who had the general charge of the office, wrote $40,000. It is difficult to understand why this record was not sufficient to justify both the defendants in discharging complainant from their employ. If this were so, his right to the renewal commissions would have ceased with his discharge. *Phœnix Mut. Life Ins. Co.* v. *Holloway*, 51 Conn. 310.

Complainant commenced to work for Bradley July 7, 1890, in the interests of the company, under a written contract, by which he agreed to work for one year from

July 7th. Bradley guaranteed commissions to be at least
$50 a month and traveling expenses.   Before January 1st
following, he secured about $100,000 insurance.   There
was a verbal understanding that, if complainant were
successful as a solicitor, some other arrangement should
be entered into.   His success was deemed sufficient to
justfy entering into the contemplated agreement.   There-
upon Bradley, on December 9, 1890, wrote to the com-
pany the letter found in paragraph 2 of the former opin-
ion.   In that letter was this significant and unequivocal
language:

"I have made arrangements with him [Houghton] to
give him one-half interest in the renewals on all business
secured after January 1, 1891, *as long as he remains
with the company*, under the firm name of ' Bradley &
Houghton, General Agents.'"

Complainant read this letter before it was sent, and
was fully aware of its contents.   In the reply by the com-
pany, set forth in paragraph 3 of the former opinion, it
said:

"We note that on and after January 1, 1891, you have
agreed to give him one-half interest in all the renewals on
all business secured after said date, *as long as he con-
tinues with the company.*"

The company assented to the agreement.   This letter
was also read and its contents understood by complainant.
Complainant and Bradley then made the agreement found
in paragraph 4 of the former opinion.   That agreement
contained the following language:

"I [Bradley] agree to give him [Houghton] one-half of
the renewal commissions on all new business secured and
placed on the books of this agency from and after January
1, 1891, *as long as he remains with this agency;* also,
the full first year's commission on all business secured by
him."

The bill was evidently drafted in recognition of the force
and meaning of the unequivocal language of the agree-
ment, and sought to avoid its effect by alleging that there

was a "custom of the business of life insurance, as between life-insurance companies and their general agents, that such general agents have a permanent interest in the insurance secured by such agents, which interest is in the form of a percentage of the renewal premiums on the policies which represent such insurance, which interest is called 'renewal commissions,'" and that said agreement was entered into "under and with reference to said custom and such usage." Complainant entered upon his proofs upon this theory, and his first witnesses were several general agents of other companies, introduced in the attempt to establish this custom. The testimony failed to show any such custom or usage, and the court so found. If, however, such a custom were proven, it would not avoid the plain terms of the contract. *Stagg* v. *Insurance Co.*, 10 Wall. 589; *Iron Duke Mine* v. *Braastad*, 112 Mich. 79. The language of this contract cannot be construed as giving complainant a permanent interest in these renewals, without doing violence to the common rules of construction. In fact, the language is so plain that it leaves no room for construction. Twice, in the letters written before the contract was made, the same language was used, and was read by and known to the complainant. In *Stagg* v. *Insurance Co.*, *supra*, plaintiff's contract read as follows: "For your services as above, you will be allowed a commission of 10 per cent. on the first premiums (cash and notes), and 5 per cent. on all subsequent renewal premiums, *so long as you continue the agent of the company.*" It was held that his right to the commissions ceased with the termination of his agency. See, also, *North Carolina, etc., Ins. Co.* v. *Williams*, 91 N. C. 69 (49 Am. Rep. 637); *Spaulding* v. *Insurance Co.*, 61 Me. 329. No other case better illustrates the wisdom of the rule that parties are bound by the plain terms of their contract, and cannot change them by parol testimony of a different one. The parties have agreed in writing, and in language susceptible of but one meaning, that complainant's right to renewal commissions is limited

to his term of service. It is sought to introduce into the contract, by parol, another provision, extending this right beyond the term of service. Upon this, the testimony is in direct conflict.

This disposes of the only question in the case which we think important to consider. Complainant was only entitled to the renewals up to the time of the dissolution of the partnership, which included what is known as "purchased insurance," to the purchase of which he contributed.

The decree will be reversed, and the case remanded to the court below for an accounting and decree in accordance with this opinion. The defendants will recover the costs of this court.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred. HOOKER, J., did not sit.