## REPUBLIC SUPPLY CO. v. CLARK et al.

No. 10692.

Circuit Court of Appeals, Eighth Circuit.

Feb. 10, 1937.

Robert C. Knox, of El Dorado, Ark., for appellant.

Charles E. Wright, of El Dorado, Ark. Neill C. Marsh and Neill C. Marsh, Jr., both of El Dorado, Ark., on the brief), for appellees.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

This is an action begun by H. E. Clark (revived in his executors) to recover upon eight promissory notes and, in support thereof, to impress a vendor's lien upon an oil and gas lease, the improvements thereon, and the proceeds from sale of certain oil produced therefrom. The notes were part of the price paid for the assignment of an oil and gas lease made by the lessees (Clark and another) to the Magna Producing Company. The Magna Transportation Company had indorsed the notes. The Republic Supply Company had become a creditor of the Magna Producing Company during the operation by the latter of the assigned lease. To secure such indebtedness, the Republic took a deed of trust from the Magna Producing Company upon various properties, including this lease. Thereafter, the secured debt was defaulted and the deed of trust foreclosed. The Republic bought this lease at the foreclosure sale, went into possession and continued operation thereunder up to the decree in this case. During such operation, it produced and sold oil and gas and retained the net proceeds as its own.

In this action, appellees sought recovery on the notes and foreclosure of its vendor's lien as to the two Magna companies. As to the Republic, they asked recovery of any deficiency from the above foreclosure up to the value of all improvements removed from the leasehold by the Republic during its occupancy and "the value of all oil and gas produced and sold by said defendant, after it went into possession of said property." The court entered a decree of foreclosure and the lease was sold. In connection with this decree, the court determined that the Republic has removed certain casing of the value of $574.92 and had disposed of oil for a net profit above cost of production of $3,808.22, making a total of $4,383.14. To this latter sum the court declared appellees entitled up to the amount of any deficiency on the foreclosure and continued the proceeding as to the Republic until the amount of the deficiency was determined. After the sale, which resulted in a deficiency beyond the above $4,383.14, appellant paid the value of the casing ($574.92) to appellees. Thereafter, decree was entered against the Republic for $3,808.22 which represented the net proceeds realized by it from the sale of oil and gas produced from the leasehold during its possession and operation thereof. From this decree, the Republic appeals.

While there is but one broad issue here, namely, whether the above proceeds of the oil and gas produced and sold by appellant is subject to this vendor's lien, yet determination thereof required examination of two matters. The first is the legal status

of this lien. The second is whether these proceeds are within the lien.

### (1) Legal Status of The Lien.

■ A vendor's lien was expressly reserved in the assignment of this lease to the Magna Producing Company. The Arkansas decisions recognize a difference between an implied equitable vendor's lien and an expressly reserved lien in the sales agreement. Such decisions regard the expressed lien as or in the nature of an "equitable mortgage" and enforceable as such against all parties thereafter dealing with the property with notice thereof. Talieferro v. Barnett, 37 Ark. 511, 516; Robinson v. Woodson, 33 Ark. 307, 310; Ober v. Gallagher, 93 U.S.(3 Otto) 199, 206, 23 L. Ed. 829. This is the view generally held in other jurisdictions. 91 A.L.R. 148, note; 66 C.J. 1216, § 1076. There is no controversy here as to notice of the Republic of the provisions in the assignment of the lease. The parties agree that the Republic is in no better position than the Magna in respect to liability under this lien. Such is shown to be the law in Arkansas by the above citations. Accepting that appellant is bound by the lien, the issue remains as to whether the lien covers or includes the proceeds of oil produced under the assignment of the lease.

### (2) Are Oil and Gas Proceeds Within the Lien?

■ What the lien covers is to be determined by the language thereof as applied to the subject-matter here in controversy. Brown v. Spilman, 155 U.S. 665, 670, 671, 15 S.Ct. 245, 39 L.Ed. 304; Gilbreath v. States Oil Corporation, 4 F.(2d) 232 (C.C.A.5); Lewin v. Telluride Iron Works Co., 272 F. 590, 597 (C.C.A.8). The lien in the instrument of assignment is as follows: "A vendor's lien is hereby expressly retained upon the lease and personal property upon it and used in connection with it to secure the payment of the notes described above according to their tenor and effect." Another paragraph requires the assignee to pay taxes, to relieve from laborers' and similar liens, and "to operate said lease with due diligence and in an efficient manner," with the provision that default in any of these things or in payment of the notes shall entitle the noteholders "to an immediate foreclosure of the vendor's lien hereinabove reserv-

ed, and to the immediate possession of said property pending such foreclosure."

The only expression in the first above quotation pertinent here is that the lien is upon "the lease." Does "lease" cover proceeds from production under the lease? The argument of appellees is that "the oil herein involved was an integral part of the lease pledged to secure appellees' notes. Of necessity, the removal and sale of that oil would tend to impair the security" and would constitute waste. Appellant argues that the production and marketing of the oil by the assignee was contemplated and required by the assignment; that the assignee had the right to produce from wells open at the time of the assignment; and that the proceeds from production belong to the assignee—being "similar at least to the right to receive rents and profits generally."

While the above language creating this vendor's lien has the effect of a mortgage, it is not a separate instrument. Therefore, construction of its language must be made as a part of the entire instrument (the assignment) of which it is but a part. See Foxcroft v. Mallett, 4 How. 353, 378, 11 L.Ed. 1008; Shafer v. Spruks, 226 F. 922, 923 (C.C.A.3). The assignment provided for conveyance of an existing lease in return for payment of $120,000—$40,000 of which was cash to the assignors, $3,489.36 cash to a mortgagee, and the balance represented by 48 notes payable monthly over a term of two years. The lease is not in this record so we do not know the term for which it was made but the assignment is for the entire term. There was a requirement for diligent and efficient operation of the lease. The lease conveyed no title to the gas and oil, but granted a "right to explore the land, and to produce therefrom the gas therein discovered." Osborn v. Arkansas Territorial Oil & Gas Co., 103 Ark. 175, 146 S.W. 122, 124. It is clear that the development of this lease would require considerable outlay by the operator—this may be inferred from the actual experience of appellant which expended (April 1, 1931—August 31, 1935) $25,607.37 for a net profit of $3,677.53. The purchase price of the assignment assures that the parties, at the time of the assignment, regarded this property as capable of substantial production—during the above period of operation by appellant it produced and sold crude oil for $29,284.90.

In this situation, we are asked by appellees to construe the lien to cover the oil and gas produced during the term of the lease after assignment. If this be proper, the assignee would have to retain unsold the expected substantial production or any one purchasing such with notice of the lien would buy at his peril. Ordinarily, ore mined becomes at once the personal property of the lessee [40 C.J. 1013, § 615, notes 33 and 34; Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S.W.(2d) 1037; Brewer v. Forest Gravel Co., 172 La. 828, 135 So. 372; Hinkle v. Grosjean, 181 La. 175, 159 So. 314; Hammonds v. Central Kentucky Natural Gas Co. 255 Ky. 685, 75 S. W.(2d) 204] and the expense, hazard, and difficulty of storing gas or oil on a leasehold would seem to make this rule peculiarly applicable to oil and gas production. Such a result as contended for must clearly appear for it contemplates hardships and limitations upon the assignee which are unusual. Here, the lien expressly attaches to "personal property" upon and used in connection with the lease, but this obviously refers to the machinery, casing, and similar property. The lien upon the "lease" is reasonably construed as meaning and applying to the privilege or right to operate. It cannot be said that it clearly includes production. Had the parties intended to include production within the lien, it could have been easily stated. See Iron Duke Mine v. Braastad, 112 Mich. 79, 70 N.W. 414. We construe it otherwise.

The decree is reversed and the case remanded with instructions to set aside the decree and enter a decree for appellant.