77 U.S. 589
 19 L.Ed. 1038
 10 Wall. 589
 STAGG
v.
INSURANCE COMPANY.
 December Term, 1870
 
 ERROR to the Circuit Court for the District of Missouri; the case being this:
 Stagg became the agent of the Connecticut Mutual Life Insurance Company, in October, 1849, by his acceptance of a circular which contained this language:
 'The usual compensation of agents, so far as we know, is 10 per cent. commission on the premiums, with one dollar for each policy, and 5 per cent. on the premiums on the renewal of policies.'
 This circular gave him certain instructions about his agency, and some suggestions as to the modes of inducing persons to insure with the company. In about a year afterwards he received another circular like the former one in its main purpose, but much more full and specific; a sort of short essay on the subject of life insurance, setting forth its advantages, and pointing out the various reasons which the agent might advantageously suggest to persons whom he should address, why they should insure their lives, and do this with the Connecticut company rather than with any other company. This second circular, intended obviously for his careful perusal and study throughout, contained, in lieu of the language above cited, from the first one, the following:
 'For your services, as above, you will be allowed a commission of 10 per cent. on the first premiums (cash and notes), and 5 per cent. on all subsequent renewal premiums, so long as you continue the agent of the company.'
 The plaintiff received and acted on this latter paper for about fifteen years, when he was discharged. He now brought this suit, claiming some $3000, as the 5 per cent. commission on the renewal premiums of policies originally made by him as agent, which had been received by the company since he was discharged.
 To support this claim he undertook to prove by other insurance agents that such was the custom as between insurance companies and their agents. But the court ruled as matter of law that there was an express contracts in the case, and that the custom could not be admitted.
 It also ruled that the later circular was substituted as a new contract instead of the first one, and that its fair construction was to limit the agency to the pleasure of the company, and to terminate the right of the agent to commissions on renewal premiums with the revocation of his agency.
 These rulings, or more particularly the second one, made the error complained of.
 
 Mr. J. C. Moody, for the plaintiff in error:
 
 When Stagg received the second circular, he had already a contract with the company fixing the terms of his agency. He knew they could not be changed without his consent. If the company wanted to change them he might well have presumed that they would address him directly upon the subject. He might have overlooked the little clause in question of the second circular entirely, covered up, as it was, in a mass of other matters; or, if it had caught his attention, he might have thought that it was meant for subsequently employed agents.
 Now, if he did not notice the clause, that is to say, if he did not really apprehend it as a proposition directly made to him, how shall he be bound by it? It becomes, then, a main question in the case, 'Is it so plain that the circular was meant to bring about a change in the terms of Stagg's agency, that the law will impute to him a recognition of such intent?' Let it be kept in mind that it takes two to make a bargain, and as many to unmake one. The use proposed to be made of this circular is to unmake a bargain of a year's standing; to convert the circular into a direct personal address to Stagg, saying: 'Either give up your contract entitling you to an interest in renewals, or by which you claim such interest, or resign.' But the Connecticut Life Insurance Company was possessed of no authority to deal with its agents in this military style. It had contracted with Stagg, and if it was dissatisfied with its contract, it should have addressed him directly on the subject, in the usual way of conducting a business correspondence. The clause in the circular looks like a trap to catch the unwary.
 But assuming that the circular is the equivalent of a direct appeal in the usual mode of a commercial correspondence, proposing that Stagg accept of the new terms of resign, is his silence acceptance of the new terms? We deny that it is. If A. has bought a horse of B., and obtained possession at the agreed price of $200, would he be bound to take any notice whatever of a note from B. informing him that if he retained the horse he would expect $500 for him? If an auctioneer had sold a hundred horses, and delivered them, or a hundred houses, and delivered them, could he impose new terms upon the purchasers through the instrumentality of a circular like this? Of course not, in either case. Stagg, before and at the issuing and reception of the circular, had his contract with the company, and possession under it. He was no more bound to answer a proposition from the company for new terms than was the company to answer a similar proposition from him. The limit of his right in that direction was to write to the company, saying: 'Send me better terms, or I resign.' The limits of the company's right with him was a direct note, saying: 'Accept harder terms, or we turn you out.' It could not even say, 'Accept the harder terms, or resign.' If it had, he would not have been bound to resign. Nor would his failing to resign afford an argument that he had accepted the harder terms. He had, in that view, the right of continuing on under his old contract until removed.
 So we may say that, admitting the clause referred to in the circular was meant for Stagg; that he so understood it; that he was bound to treat it as a direct proposition to accept the new terms or resign (all which matters we deny), it put no obligation upon his either of accepting the new terms or of resigning.
 The company not being possessed of power to compel his resignation, but only to remove him, he might well wait to see, if after all, they would go so far as to turn him off. Possibly they might not do so.
 We do not deny that the agency held under the letter of 1848 was held at the pleasure of the principal. Our proposition is that, being so held, the company never revoked it until they removed Stagg in 1864; that the agency was not revoked by the circular of 1849.
 Mr. J. M. Krum, contra.
 Mr. Justice MILLER delivered the opinion of the court.
 
 
 1
 The right of the insurance company to terminate the agency of the plaintiff, at its discretion, is not denied by his counsel, nor is there any serious effort to support the offer to prove the custom. Indeed, if the court was right in holding that the contract between the parties was expressed by the language of the second circular, it is quite clear there was no room for usage, for it is there expressly stated that the commission on the renewal premiums, like those on the original premiums, was to be paid only so long as the plaintiff continued to be the agent of the company.
 
 
 2
 Nor can we doubt for a moment that the later circular must be held to represent the agreement of the parties as to compensation. After having received that circular and acted on it for fifteen years, received and adjusted his compensation by it, he is estopped to deny that it was the contract under which he acted. If there was any other contract it was for him to show it. He does not do this by producing the circular of the year previous. If there was anything fraudulent, unfair, or illegal in the new terms offered, or in the mode in which he was induced to accept them, he should have shown it, but he has not even attempted it.
 
 
 3
 We are, therefore, clearly of opinion that when it is shown that, as agent of the company, he received and acted upon that circular, he is bound by its terms as the measure of his compensation.
 
 
 4
 JUDGMENT AFFIRMED.