THE HERCULES MUTUAL LIFE ASSURANCE SOCIETY OF
THE UNITED STATES, Respondent, v. HENRY BRINKER,
Impleaded, etc., Appellant.

By a contract between plaintiff and F., the latter was appointed plaintiff's
general agent, with authority to effect assurance upon lives, and to
appoint sub-agents. F. was to receive a specified salary and office
expenses; and in addition, as commission, certain percentages upon
original and renewal premiums received by plaintiff upon policies
procured to be issued by F.; when the premiums were collected by other
agents, the expenses of collection to be deducted from such commissions.
Either party had the privilege of terminating the contract by giving
three months' written notice. Plaintiffs gave the notice required. In
an action upon a bond given by defendants as sureties for F., *held*
(FOLGER, ANDREWS and EARL, JJ., dissenting), that the right of F. to
commissions upon policies procured through his agency continued after
the termination of the contract, and as long as any of the policies were
kept in force by renewals; that as soon as a policy was issued, through
F's agency, he acquired a right to such commissions dependant upon
the collection of the renewal premiums by plaintiff; and that defendants
were entitled to have allowed the agreed commissions upon all renewal
premiums received by plaintiff.

Also *held*, that the presumption, in the absence of evidence, was in favor
of the existence rather than the lapse or cancellation of a policy;
and, as the facts were in the knowledge of plaintiffs and could not be
known to defendant, the burden was upon plaintiff to show the facts if
any of the policies so procured by F. had lapsed, or if the renewal pre-
miums had not been paid.[*]

(Argued March 31, 1879; decided June 5, 1879.)

APPEAL from judgment of the General Term of the Supreme
Court, in the first judicial department, affirming a judgment
in favor of plaintiff, entered upon the report of a referee.

This action was brought upon a bond given by Joseph
Fleischl as principal, and the defendants as sureties, condi-
tioned for the faithful performance by Fleischl of his duties
as agent of plaintiff, and to pay over all moneys belonging to it.

It appeared, and the referee found in substance, that on

[*] As appears by mem. of decision, there was no prevailing opinion on decision of
appeal; the points determined are taken from opinion on motion for re-argument.

December, 15, 1869, plaintiff and Fleischl entered into a contract the body of which the following is a copy :

"This agreement made the 15th day of December, A. D., 1869, between Hercules Mutual Life Assurance Society of the United States, of New York, and J. Fleischl of the same place : Witnesseth :

"That the said society doth hereby appoint the said J. Fleischl as superintendent of the German Department, for the State of New York, for the said society for the purpose of procuring and affecting assurance on the lives of individuals, and securing applicants therefor, who shall be satisfactory to the said society, and for the purpose of collecting and paying over premiums on such assurances when effected, and do authorize the said J. Fleischl to appoint sub-agents throughout the State of New York, for the same purpose, to supervise the actions of such agents, and be responsible to the said society for them.

"This appointment is on the following terms and conditions, which are agreed to by each party hereto.

"The compensation to be allowed the said J. Fleischl for business obtained by him or by his agents through him shall be as follows :

"On the ordinary premiums upon ordinary whole life policies thirty (30) per cent on the first year's premium, and seven and one-half ($7\frac{1}{2}$) per cent on renewals.

"Ordinary endowment policies with ten years or more to run, thirty (30) per cent on originals, and seven and one-half ($7\frac{1}{2}$) per cent on renewals.

"Whole life policies and endowment policies with ten or more years to run, if paid for by ten annual payments, thirty (30) per cent on originals, and seven and one-half ($7\frac{1}{2}$) per cent on renewals.

"On the last-named policies, if paid for by five annual payments, twenty (20) per cent on originals, and five (5) per cent on renewals.

"On like policies, if paid for by one single payment, six (6) per cent.

" On extra premiums for extra privileges, two and one-half $(2\frac{1}{2})$ per cent.

" On all policies not obtained through his instrumentality when the premiums are collected by him, one (1) per cent.

" The commissions upon policies other than as above stated shall be fixed by the said society.

" Commissions shall accrue only as the premiums are paid to the said society in cash.

" When premiums upon policies of the said agent are collected by other agents, the expense of collection, not exceeding one per cent, shall be deducted from the commission to be allowed on such premiums, as above stated.

" The district assigned to J. Fleischl shall embrace for the German Department, the State of New York, but such district is not assigned exclusively to him.

" The said J. Fleischl agree to act exclusively for the said society, and for no other life insurance company.

" The authority of the said J. Fleischl shall extend no farther than is above stated. He shall not make, alter nor discharge any contract made by the society nor waive forfeitures. All collections made under this agreement shall be by him promptly paid over to the said society.

" The said J. Fleischl agrees to submit to and abide by all the rules and regulations of said society, and to devote his time and best energies to its service, otherwise this agreement to be void and of no effect.

" It is understood and agreed that the said society may off-set against any claims for commissions under this agreement any debt due by the said J. Fleischl to said society.

" The said society further agrees to pay the said J. Fleischl a salary of $2,400 per annum ; also to pay such traveling expenses as are actually incurred in the service of the society, and to provide and furnish an office, free of charge, to said J. Fleischl ; also to supply all stationery and printed matter necessary to the proper transaction of the business free of charge.

Either party hereto may terminate this agreement by giv-

ing to the other three months' notice in writing to that effect, unless otherwise terminated by its own conditions."

Fleischl entered upon his duties and continued to act as plaintiff's agent until the termination of the agreement August 15, 1872, by a three months' notice given by plaintiff as specified in the contract. After the commencement of the action plaintiff became insolvent and a receiver was appointed. It was stipulated that the action should be continued in the name of the company. It was stipulated also, that all counter-claims existing in favor of Fleischl should be presented and passed upon in this action.

The further material facts appear in the opinion.

*George F. Martens*, for appellant. The referee should have allowed the claim of Fleischl to the defendants. (*In re Van Allen*, 37 Barb., 225, 230; *Holbrook* v. *Am. F. Ins. Co.*, 6 Paige, 220; *Jones* v. *Robertson*, 26 Barb., 310.)

*Peter B. Olney*, for respondent. Fleischl was not entitled to any commissions upon renewals after October 1, 1872, the date upon which the last renewals were collected by him and paid to the company in cash. (*Martin* v. *Kunsmuller*, 37 N. Y., 397; 3 R. S. [6th ed.], 615, § 13, sub. 8; *Myers* v. *Davis*, 22 N. Y., 489, 491.) The fact that this action is prosecuted for the benefit of the receiver does not help the alleged counter-claim. 3 R. S. [6th ed.], 749, § 55; id., 755; § 89; id., 37, § 9; id., 41, § 41; *In re Van Allen*, 37 Barb., 228; *Bradley* v. *Angell*, 3 N. Y., 475.)

Earl, J. (dissenting). This action was brought to recover of the defendants, upon a bond signed by them as sureties for one Fleischl, one of plaintiff's agents, the amount due to it from such agent. The most important question to be determined here is the construction of the contract under which Fleischl acted as agent.

The plaintiff was an insurance company, organized under the laws of this State, having its principal place of business

in the city of New York.   On the 15th day of December, 1869, it entered into a contract with Fleischl by which he was appointed its agent, with authority to procure and effect insurances upon lives and to collect and pay over to the company the premiums received for such insurances, and for that purpose to appoint subagents and to supervise their actions. The appointment was stated to be upon certain terms and conditions, among which were the following :   The compensation to be allowed Fleischl for business obtained by him or by his agents through him was to be as follows :  On the ordinary premiums upon ordinary whole life policies, and upon ordinary endowment policies with ten years or more to run, and upon whole life policies, and endowment policies with ten or more years to run, if paid for by ten annual payments, thirty per cent on originals, and seven and one-half per cent on renewals ; and a less percentage upon policies having a shorter time to run ; on all policies not obtained through his instrumentality, where the premiums were collected by him, one per cent.   It was provided that where premiums upon policies procured to be issued by him were collected by other agents, the expense of collection, not exceeding one per cent, should be deducted from the commission to be allowed him on such premiums, and that commission should accrue to him only as the premiums should be paid to the society in cash.   He agreed to act exclusively for this society, and to submit to and abide by all its rules and regulations, and to devote his time and best energies to its service ; otherwise the agreement was to be void and of no effect.   It agreed further to pay him a salary of $2,400 per annum, and also to pay his traveling expenses and to provide him an office, and to supply him all stationery necessary to the proper transaction of the business free of charge.   The last clause of the agreement is as follows : " Either party hereto may terminate this agreement by giving to the other three months notice in writing to that effect, unless otherwise terminated by its own conditions."

Under this contract Fleischl immediately entered upon his

work, and prior to August 15, 1872, had obtained insurances upon many lives, and earned commissions upon premiums taken therefor. In May, 1872, the plaintiff gave him written notice, under the last clause of the contract, terminating the contract on the 'fifteenth day of August thereafter. After that day he ceased to act for the plaintiff under the contract, and ceased to collect any premiums for the renewal of policies. But the claim on behalf of the appellant is, that Fleischl was entitled by the terms of the contract, notwithstanding its termination, to his commissions upon all premiums thereafter received by the society for any renewals during the running of the policies. It is my opinion that this claim is unfounded. The contract provides that Fleischl was to receive a salary and all his expenses, and in addition thereto a compensation for all business obtained by him or his agents for the society. This compensation was to be regulated by commissions allowed him upon every policy and upon every renewal of a policy, and the commission allowed upon the policy was for procuring the insurance and receiving and paying over the premium, and the commission upon a renewal was for the services in procuring such renewal and receiving and paying over the premium therefor. The allowance of commissions was for specific service to be rendered in each case, and there is nothing in the contract indicating that any service was to be rendered after the contract was terminated. So long as Fleischl was in the service of the society, he was entitled to his salary and expenses and an office, and it will not be claimed that he was entitled to these after the termination of the contract. That could by its terms be terminated in two ways : First, if he refused to submit to and abide by the rules and regulations of the society and to devote his time and best energies to its service, then the agreement was " to be void and of no effect." If that event had happened, he certainly could have claimed no further benefit from the contract. It would have ceased to have operation for any purpose, and so the parties plainly meant. Second, either party could

terminate it by giving three months' notice, "unless other-wise terminated by its own conditions," and the only other way is the one above mentioned.  The termination in the last way was to have the same effect as a termination in the first.  When the contract was terminated in either way it would cease to speak or have further operation.  Such was the plain intention of the parties.  That a contract which was terminated should continue to regulate the rights of the parties for an indefinite time which could not be curtailed by the society or the conduct of Fleischl, could not have been intended.

If the claim of the appellant be well founded, the agree-ment could become void by the agent's misconduct, or he could terminate it by the three months' notice and engage in the service of a hostile or rival company, and yet, so long as the policies issued through him continued to run, he would be entitled to commissions upon the renewal premiums; and this might extend through his life, and if the policies were then in force, he could bequeath such commissions or trans-mit them to his next of kin to be received by them for an indefinite time, and he could traffic in them during his life-time.  A further consequence would be that every time the society canceled a policy for any reason, the agent could question it on the ground that it interfered with his vested right to commissions upon renewals.  To a company having numerous agents such a contract would be most embarrass-ing and inconvenient; and I do not believe from the lan-guage used in this contract that the parties contemplated such consequences.

The provision for the deduction of one per cent from the commissions upon premiums collected by other agents does not conflict with these views.  That provision, like other parts of the contract, was to have force only while Fleischl was in the service of the society and the contract was in force.

In *Fudickar* v. *Guardian Mut. Life Ins. Co.* (62 N. Y., 392), the contract between the parties expressly provided

that the agent was to receive the commissions on renewal premiums during his life. There the agreement with the agent was to be binding upon the company for five years, and it was provided that " if it should cease to be in force," the agent was to be " entitled to all renewals of the business done previous to the change." No similar or analogous provisions are found in the contract under consideration here.

Under this construction of the contract, nothing more would have to be said, as the evidence fully justified the conclusion of the referee as to the state of the accounts between the society and their agent. But if I am wrong so far, the judgment will still have to be affirmed, for reasons which I will now proceed to state.

The defendants in their answer alleged that the agency of Fleischl, under his contract with the plaintiff, was terminated on the 15th day of August, 1872, and that at that time there was nothing due from him to it, and such termination was established by the proof. I infer, however, from the evidence that he rendered some service to the company after that date. This action was commenced in March, 1873, and a receiver of the plaintiff was appointed and judgment of dissolution was entered in June thereafter. Upon the trial it was stipulated that all counter-claims which Fleischl had against the plaintiff could be proved in defense of this action. He was sworn as a witness, and we must assume that he gave all the evidence he could of his claims against the company. He proved the number of policies which had been issued by the plaintiff through him, and what his commissions would have amounted to down to the trial, if the renewal premiums had been paid. But he did not prove nor attempt to prove that one dollar of such premiums had actually been paid to the company. On the contrary, he testified that he could not say that any premiums had been paid after the year 1872. It is inferable from the evidence that in the fall of 1872 the business of the society was in some way transferred to the New Jersey Mutual. If it was, and its risks were reinsured

in that company, and the subsequent renewal premiums received by that company, it would be quite extraordinary if this contract would bear the construction that Fleischl's right to commissions still continued against the plaintiff. The probabilities are that in fact no renewal premiums were paid to the plaintiff after Fleischl's connection with it ceased.

There was no objection upon the trial to the proof by defendants of all Fleischl's claims to commissions, and it does not appear that the referee upon the trial or in his report construed the contract differently from what the appellant now claims it should be construed. He allowed to the defendants all the claims of Fleischl against the company which, upon the evidence, he was bound to ; and there was ample warrant in the evidence for the balance which he found due the plaintiff.

It was claimed upon the argument before us that it was incumbent upon the plaintiff to show that the policies issued through Fleischl were not in force, and to show the amount it received upon renewals. On the contrary, the burden was upon the defendants to establish the counter-claims or credits claimed by them. The plaintiff became liable for the commissions only upon payment to it of the premiums in cash. There can be no presumption of such payment, particularly in the case of such a failing and insolvent company.

Upon the trial Fleischl testified that his interest in the renewals was worth $10,000. He certainly could not claim that sum. He had no right to commissions in advance, but only as premiums were paid in cash.

It follows, therefore, whether we construe the contract as claimed by the plaintiff or as claimed by the appellant, that the judgment is right and should be affirmed, with costs.

Church, Ch. J., Rapallo, Miller and Danforth, JJ., concur for reversal and new trial.

Folger, Andrews and Earl, JJ. (the latter reading opinion), dissenting.

Judgment reversed.

On subsequent motion for re-argument the following opinion was read :

DANFORTH, J. :

The judgment in this case was reversed, because in the opinion of a majority of the members of the court, the defendants were entitled to have allowed commissions on all renewal premiums received by the plaintiff or its assigns " upon policies procured to be issued" by Fleischl, less the expense of collection, not exceeding one per cent. This was secured to him by the terms of the agreement, and the question whether this right continued after his discharge as agent, was the turning point in the case. It seemed to us that it did, and that the contrary construction given to the contract by the Supreme Court, and insisted upon by the respondent, was in this respect incorrect. Fleischl was to procure and effect insurance; he was authorized to appoint subagents throughout the State of New York for the same purpose, and supervise their action, and was required to be responsible for them. His powers under this responsibility were therefore large, and it is easy to see that in the very beginning or outset of his agency, large expenditures must be incurred by him beyond those provided for by the company, and much labor bestowed to make the field productive. The result might not appear for a long time, and we should expect the stipulated reward to be proportionate to the expectation of the return, not instant, but future; and so we find in the agreement, that the appointment is accepted upon condition that the compensation to be allowed for business obtained by him, or by his agents through him was to be, on ordinary policies thirty per cent on the first year's premium, and seven and one-half per cent on renewals, and a like difference in the commission for other kinds of policies; in each case and for the first year a large commission, and less on renewals. We regard this as a positive agreement, continuing so long as the policy is kept alive by renewals, and effective as to each policy procured

by him, or by his subagents. That these commissions are
to accrue only as the premiums are paid to the society in
cash, secures the ·company from loss, and makes it for the
interest of Fleischl that the policies shall be kept up, and
so secures the company from any interference by him in case
he ceases to be their agent; for to the extent of his commis-
sions his interest would still be with them. But again, it
is not contemplated that Fleischl shall collect the premiums
in all cases, and therefore provision is made for such a case;
" when," says the agreement, " premiums upon the policies
of said agent are collected by other agents, the expense of
collection, not exceeding one per cent, shall be deducted
from the commission to be allowed on such premiums, as
above stated." This is done without interference or action
by him. The contention of the plaintiff's counsel is there-
fore against the plain language of the agreement when he
argues that commissions were to be paid Fleischl, only on
premiums actually collected and paid to the society by him.
The commissions, by whomsoever the premiums are collected,
are to be paid by the society to Fleischl as due for business
obtained by him or his agents. He acquired a right to
them the moment a policy was issued; payment, however,
depends upon their collection by the company through him
or some other person,—as to that he takes the risk,—but
so long as the premiums upon the policies are paid to the
company, he is entitled to his commissions. The termi-
nation of the agreement does not affect this right. It was
to be his compensation for securing the policy taker, and
the measure of that compensation is not limited to commis-
sion on the first year's premiums, but extends to all there-
after paid. The agreement may be terminated by notice,
and there are many provisions in it to which that act would
apply, but it is nowhere provided that the agreement may
be rescinded, or that the rights acquired under it shall be
forfeited. For aught that appeared upon the trial, the poli-
cies were still alive, and renewal premiums paid. Whether
this was the case or not, was known to the plaintiff, and

could not be known to the defendant, and the burden asw thus upon the plaintiff to show what, in this respect, the fact was. In the absence of all evidence, the presumption is in favor of the existence rather than the lapse or cancellation of a policy. The various questions presented upon this motion so far as they affect the one above referred to, were considered by the court in the decision of the appeal, and no sufficient reason is stated for a re-argument.

The motion should therefore be denied, but without costs.

All concur, except EARL, J., dissenting, and FOLGER and ANDREWS, JJ., absent

Motion denied.