# GEORGE MORTON SCOTT *vs.* TRAVELLERS' INSUR-ANCE COMPANY OF HARTFORD, CONN.

*Right of Insurance Agent to Renewal Commissions—Construction of Contract.*

A and B, partners, were the agents of a life and accident insurance company under a contract which provided that its termination should end all interest of the agents in renewal premiums and commissions thereon. After the expiration of this contract B was constituted the agent of the company under another contract, which stipulated that he should be entitled to commissions on premiums collected by him and to renewal premiums on policies secured by him. It was also provided that this contract should be an abrogation of all contracts of prior date between the parties; that it might be terminated by either party upon thirty days' notice; that B should be entitled to renewal commissions on premiums on policies personally secured by him as a member of the firm of A and B. The contract was terminated by B's resignation of the agency. He subsequently claimed to be entitled to commissions on all renewal premiums accruing after his resignation on all policies secured by him as a member of the firm of A and B. *Held*, that upon the termination of the contract by B's resignation of the agency, his right to commissions on the renewal premiums in question ceased, since the provision providing for their payment was operative only so long as the contract was in force, and B continued to be the agent of the company and was a part of his compensation as such agent.

Appeal from Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Robert Biggs*, for the appellant.

*William L. Marbury* and *Geo. Weems Williams*, for the appellee.

JONES, J., delivered the opinion of the Court.

The appellee in this case is a corporation organized for and conducting a life, accident and liability insurance business. In

1898 the appellant entered its employment as solicitor or agent; and on the 10th of January, 1899, he and one W. Stran Mc-Curley, with whom he had formed a partnership, became the agents for the company for the State of Maryland under a sealed contract executed by the company and the appellant and his partner.    This contract set forth the powers and duties of the agents, and provided that these should commence on the day of the date of the contract and "continue until terminated by not less than (30) days' notice of either party to the other."    It provided for compensation to the agents in these words: "The company agrees to pay commissions or other compensation, the amount of which may be increased or diminished from time to time, as the parties may agree, on business transacted by and through the agents as full compensation for all services, and full reimbursement for all expenditures as follows."    Then is prescribed a schedule of commissions to be allowed the agents in the different departments of the business and classes of policies; after which is this clause: "Commissions on renewals shall be payable only on those actually collected and accounted for by the agents under this agreement, and termination hereof for any cause shall terminate all interest of the agents in renewal premiums and commissions thereon."

On June 20th, 1902, the appellant and McCurley resigned the State agency under the contract which has just been referred to; and on the first of July, 1902, an agreement was executed between the appellee and the appellant by which the appellant was appointed "Special Agent Life Department * * * in the City of Baltimore and vicinity," in which the appellant agreed "in consideration of the foregoing appointment, and of other valuable considerations hereinafter named, to act as Special Agent Life Department as aforesaid, and to faithfully and thoroughly canvass the territory assigned him for the purposes aforesaid so long as he shall continue to act as such Special Agent Life Department; devoting his entire time and energies to the interest of said business exclusively, during the continuance of this agreement and shall not di-

rectly or indirectly place insurance elsewhere without the consent of the party of the first part." For the services thus to be rendered by the appellant compensation was provided for as follows, the appellee was to pay him "commissions upon all premiums collected and accounted for by him   *  *  * which may be changed from time·.to time as parties may agree, and which party of the scond part agrees to accept as full compensation for all services or expenses incurred during his employment as such Special Agent Life Department." In connection with this clause there is set out a schedule of commissions to be allowed on the different classes of policies of insurance which is followed by this provision "said company agrees to pay said Scott (appellant) renewal commissions of five per cent·on premiums on life and endowment policies (subjeet to ten or more annual premiums) written hereunder and duly reported and paid to the company in cash, application for which are secured by the said Scott, and on which no renewal commission will be due to any other agent or employee of the company." Following this are provisions requiring an accounting and statements from the appellant to the company in reference to business transacted by him under the contract and one that he is not "to receive any moneys due or to become due, to said company, excepting on policies and renewal receipts, signed by an officer of the company sent to said special agent Life Department for collection." It is then provided that the appellant is "to keep deposited" with the appellee "a bond of indemnity in the sum of two thousand dollars with good and sufficient security satisfactory 'to the appellee' for the faithful performance of all obligations under this agreement." Then are provisions for keeping books and accounts and for transmitting moneys by the appellant, a failure to do which or "to comply with any of the terms and conditions of the contract by the appellant "shall work a forfeiture of this agreement and of all rights" of the appellant thereunder, "including the right to collect any premiums then or thereafter payable or to receive commissions thereon."

The contract concludes with the following clauses: "It is

understood and agreed that if said party of the second part (appellant) has at any time held any relation to the said company (appellee) as agent or sub-agent, or broker, or otherwise, the acceptance of this appointment will be understood to be and shall he independent thereof and an abrogation and annulment of such relation in every respect, and of all agreements of prior date, and said party of the second part shall act as special Agent Life Department for said party of the first part solely, under this appointment   *   *   *.   This agreement may be terminated at any time by thirty days' written notice by either party to the other.   Said company agrees to pay said Scott (appellant) a renewal commission of five per cent (5 %) on premiums on life and endowment policies (subject to ten or more annual premiums), personally secured by him prior to date hereof as a member of the firm of Scott & McCurley on which no commissions are due to any one else."

On the 1st of October, 1902, the appellant tendered, in writing, his resignation of the agency created by the foregoing contract to take effect in thirty days from October 3rd, 1902, and at the expiration of the designated time went out of the service of the appellee company.   After the expiration of about a year from the date of the resignation he made demand upon the appellee for payment to him of commissions at five per cent on premiums on life and endowment policies secured by him prior to the date of the contract of July 1st, 1902, as a member of the firm of Scott & McCurley, and of which there had been renewals since the severance of his relations to the appellee under said contract.   This having been refused he filed in the Court below his bill of complaint in which he prayed for a discovery by the appellee of all premiums on policies so secured by him and which had been renewed since the termination of his agency under the contract in question and on which no commissions were due to any one else; that the present value of the commissions on such premiums may be computed and ascertained, and that the appellee may be decreed to pay the present cash value of such commissions so computed at the rate of five per cent.   The Court below re-

fused the relief prayed and by its decree dismissed appellant's bill.

The theory upon which the appellant's bill of complaint is based is that by a proper construction of the concluding clause of the contract of the 1st of July, 1902, he is entitled to continue to receive commissions upon premiums therein designated notwithstanding the termination of the said contract in other respects by virtue of his resignation of the agency thereby created. On the other hand the refusal by the appellee of the appellant's demand in the regard mentioned is based on the theory that his resignation of the agency, which had existed under the contract, terminated the same in every particular; and that the clause under which the appellant makes his claim ceased, as did all other provisions of the contract, to have any further operative effect. The question thus presented is the primary and fundamental one in the case, and if that be determined adversely to the appellant's contention all others are eliminated therefrom.

The rights of the respective parties here are to be determined by reference to the contract which they adopted to fix and regulate them. This would be so in any case of a contract fixing and defining the rights of the parties thereto. In this case it is so by virtue of the express provision of the contract to that effect. In construing the contract reference must be had to the instrument as a whole. No one stipulation or provision can be segregated from the contract as a whole and be given a particular operative effect that is against the intention, and what was in the minds of the parties in making it as this may be manifested, by taking all of its stipulations and provisions together. The law will assume the intention of the parties to be that each provision of the contract is to be given effect and one is not to be taken as contradictory of the other.

In this connection it may be said the attitude of the appellant before the Court is somewhat anomalous. The suit is not for the enforcement of a payment to him of commissions upon premiums renewed, as they accrue; but in seeking to have these commissions commuted and paid in a lump sum he

is suing in effect as for a breach of the contract and to have
the damages assessed once for all; and according to the alle-
gation this breach of the contract occurred after it had been
terminated as a whole by its own terms. The contention is
that, though in accordance with its terms, the contract has
been abrogated and annulled as a whole, yet the particular
provision in the last clause thereof remains of operative effect.
This would certainly not be a natural and usual condition for
parties to a contract to contemplate and provide for; and to
give an agreement such an effect it ought to found within its
explicit terms, or- to result as a necessary effect from a con-
struction of its provisions.

Is such a construction a necessary or yet a reasonable one
here from-a reading of the provisions of the contract in ques-
tion ? It is to be observed that the provision of the contract
giving to the appellant the right to the renewal commissions,
here in controversy, is without limitation or condition if it is
to bear his construction. It would apply as long as policies
were in existence to come within its terms. All the other
provisions of the contract being abrogated and annulled this
right to renewal commissions would have no relation to any
service to be rendered by him for the company; nor to any
obligation on his part towards the company. There would
be nothing which he would be under obligation to do or to
abstain from doing in consideration of his enjoyment of the
right in question. No special reason appears in the contract
for giving of this absolute and unconditional right to continue
irrespective of the existence of the contract as a whole; nor
does. there appear any consideration for it apart from the con-
sideration upon which the contract as a whole is made to rest.
This consideration was the service that the appellant was to
render and the obligations which the terms of the contract
imposed on him. The contract could be terminated by him
at the end of any thirty days to the relieving of himself from
all obligations and duties thereunder, while, according to the
contention made, the right, valuable to him and embarrassing
to the appellee, to have paid to him the renewal commissions

in question would continue indefinitely.   It is not reasonable
to suppose that the meeting of the minds of the parties to the
contract at the time of making it embraced a proposition to
such an effect, and an assent to it where it has not been so
expressed and the inducement is not apparent.   It is more
reasonable to suppose that the right to these renewal commis-
sions was among the "valuable considerations" that were re-
ferred to as going to support the contract which were intended
to be co-existent therewith and to become extinguished with
its termination as being part and parcel thereof.

The clearly and carefully expressed intention in the contract
upon the part of the appellee was to secure from the appellant
"his entire time and energies to the interest" of the business
to which the contract related, and to the service of the ap-
pellee to the exclusion of all competing business.   He was
required to keep deposited with the appellee a bond with
surety conditioned "for the faithful performance of all obliga-
tions" under the agreement; and in another clause it was pro-
vided that a failure on his part "to comply with any of the
terms and conditions" of the agreement should "work a for-
feiture of this agreement, and of all rights of the party of the
second part under the same including the right to collect any
premiums then or thereafter payable or to receive commissions
thereon."   The force and effect of these provisions would seem
obviously to be to associate every right of the appellant with
a continuance of the contract in question and of service by
him thereunder.   It is not reasonable to suppose that such
provisions with their obvious meaning and force would have
gone into the contract without qualification if such had not
been the case; nor that any reservation of a right to the ap-
pellant was understood as associated with a discontinuance of
the contract by him and a refusal of further service thereunder.

It is argued that the clause of the contract in question under
which the claim of the appellant is made is not to be controlled
by other provisions therein because of its standing apart from
the clause providing for commissions; and of its being inserted
after other provisions, not relating to compensation, have inter-

vened; but this would seem to be without force. Wherever the clause may stand in the contract it is there to secure to the appellant a right and the provisions, to which reference has been made, relate to and affect all of the rights to the appellant, that the contract provides for, if they have the force and effect indicated as arising from their proper construction. As has been said the contract is to be construed as a whole, and being so construed the clause in question like every other is to be read in the light of all the others. Construing the contract apart from any circumstances leading up to and attending its execution no warrant is found for the contention made by the appellant.

Evidence was adduced by the appellant designed to show the circumstances under which the contract in question was entered into between the parties. and that read in the light of these circumstances the construction for which he contends would appear to be proper. This testimony was made the subject of exception by the appellee. It will not be necessary to discuss these exceptions. The testimony referred to has been carefully examined, and assuming it to be properly in the case for the purpose for which it is offered its effect would be contrary to that intended by its introduction. Without prolonging this opinion with a reference to the particulars of the testimony in question, it may be said that it points rather to the conclusion that the clause in the contract of the first of July, 1902, under which the appellant here makes his claims was inserted therein simply to protect him from the loss of his right to renewal commissions on business done under the contract which he and McCurley had with the appellee for the State agency, and not to enlarge his right in that regard to a continuing and irrevocable one. Under the State agency contract the appellant, by an express provision therein, was entitled to renewal commissions only during the continuance of his agency and the life of his agreement. The contract by its terms could be terminated by either party on a notice to the other of thirty days. Obviously, therefore, he had nothing very substantial under that contract to offer as a consideration

for an enlarged right to renewal commissions under his last agreement with the appellee; and there is nothing appearing in the circumstances attending the making of that which can be taken as proof of an intention to do more than to protect him from losing altogether his right to renewal commissions on the business he had already done for the appellee under the State agency employment.

It was suggested that the appellee was anxious to retain his services. This involves an inconsistency. It is based on testimony coming from the appellee—one of its witnesses having expressly so stated. On the other hand it was argued from the evidence of the appellant that there was a systematic effort to force him out of the appellee's employment, and that this went to the extent of causing him to resign. There does not appear a suggestion of any expressed intention or threat or indication of purpose on the part of the appellant to leave the employment of the appellee in connection with the proposal and arrangements for resigning the State agency and entering into the new contract.

The view which has been expressed seems to have strong support from authorities as far as authority can control where the question to be decided rather turns upon the construction which a particular contract is to receive. In 16 *Amer. & Eng. Ency. of Law*, 919, in reference to the right to renewal commissions it is said: "Though the cases leave some ground for doubt, they seem to sanction the rule that a contract providing for the payment of commissions to the agent on renewal policies confers on him no right to collect and retain such commissions after the termination of the agency, or to recover them from the company when collected by another agent. The question has generally been determined with reference to the peculiar provision of the peculiar contract in question." In 2 *May on Insurance*, sec. 576 (4 ed.), it is said: "An insurance agent who has voluntarily left the service, has no claim to subsequently accruing commissions on policies he obtained." In *Ins. Co.* v. *Williams*, 91 N. Car. 69, it is held, speaking in reference to a contract between an insurance com-

pany and its agent, "compensation ceases when services cease unless agency or power is coupled with an interest;" and the Court adopts what was said by CHIEF JUSTICE MARSHALL in *Hunt* v. *Rousmainer*, 8 Wheat. 174, to the effect that this interest is not an interest in that which is produced by the exercise of the power. In *King* v. *Raleigh*, 70 S. W. Rep. 251, it is said: "The compensation to be received by the agent, from year to year through commissions on renewal premiums is associated with the continuance of his agency." *Ballard* v. *Ins. Co.*, 119 N. Car. 187; *Shaw* v. *Home Life Ins. Co.*, 49 N. Y. 681; *Burleson* v. *N. W. Mut. Ins. Co.*, 86 Cal. 342, and *Phoenix Mut. Life Ins.* v. *Halloway*, 51 Conn. 310–4, are further references that afford useful analogies.

The case of *Hercules Life Assur. Soc.* v. *Brinker*, 77 N. Y. 435, has been carefully examined. It was much relied upon by the appellant but does not seem to be at variance with the rule which has been stated as deduced from other authorities. It was decided by nearly evenly divided Court and the majority opinion seems, to turn upon certain circumstances peculiar to that case. It follows from the views expressed that the decree of the Court below must be affirmed.

> *Decree affirmed with costs to the appellee.*