FIDELITY & DEPOSIT CO. OF MARYLAND v. WASHINGTON LIFE
                    INS. CO. OF NEW YORK.

                (District Court, D. Maryland. February 7, 1912.)

1. INSURANCE (§ 84*)—AGENCY CONTRACT—CONSTRUCTION—COMMISSIONS—RE-
   NEWAL PREMIUMS.
        Where an insurance agent's contract for services under the general
   agent provided that he should devote all of his time to the business,
   and should receive commissions which would accrue only as premiums
   were paid, and only during the continuance of the agreement, that on
   the termination or voluntary surrender of the agency all commissions
   should cease, and that either party might terminate the agreement by
   giving the other notice in writing, etc., and when premiums were not
   collected by the agent the cost of collecting should be deducted from
   the commissions, neither the agent nor his assignee could recover com-
   missions on renewal premiums paid after the termination of the con-
   tract, regardless of the fact that after such termination statements show-
   ing renewal premiums were sent to the agent by mistake of some of
   the insurance company's employés, without any direction on the part of
   its officers.
        [Ed. Note.—For other cases,. see Insurance, Cent. Dig. §§ 111–114; Dec.
   Dig. § 84.*]

2. CUSTOMS AND USAGES (§ 17*)—CONTRACT—INSTRUCTION—COMMISSIONS.
        Where an insurance agent's contract provided for payment of commis-
   sions to accrue only as premiums were paid, and that on the termina-
   tion or voluntary surrender of the agency all commissions should cease,
   evidence of a custom among insurance companies and insurance men
   that the word "commissions," when used alone, did not include com-
   missions on renewal premiums, was inadmissible.
        [Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 34;
   Dec. Dig. § 17;* Evidence, Cent. Dig. §§ 1945–1952.]

In Equity. Action by the Fidelity & Deposit Company of Mary-
land against the Washington Life Insurance Company of New York.
Judgment for defendant.

Henry Williams, for complainant.

Francis B. James and Charles M. Leslie and Randolph Barton, for
defendant.

ROSE, District Judge. The respondent is the Washington Life In-
surance Company. It is a New York corporation. It will be called
the Company. A Dr. Skinner was its general agent for the state of
Ohio. As such he made a written contract with one Benckenstein.
The contract was approved by the Company. For the purposes of
this case it will be held to have been a contract of the Company. By
it Benckenstein became an agent of the Company. At the time this
suit was brought he was a citizen of Ohio.' He will be spoken of as
the Agent. The complainant is the Fidelity & Deposit Company. It
is a Maryland corporation. The Agent has assigned all his rights
under the contract to it. It stands in his shoes. If he could main-
tain this suit, it can. If he might not, neither may it. The case will
be discussed as if the dispute were between the Agent and the Com-
pany.

On June 27, 1901, he resigned as agent of the Company. It is admitted that while agent he was by his contract entitled to certain commissions upon renewal premiums paid to the Company upon policies originally procured for it by him. He says he is entitled to commissions on such renewal premiums as have fallen due and been paid to the Company since his resignation. It says he is not. The bill in the present case prays an accounting for such commissions. Whether he was or was not entitled to them is the sole issue. Other defenses were raised by the pleadings. At the hearing the Company did not insist on any of them.

[1] The contract of agency is dated February 5, 1899. It is made on one of the Company's printed blanks. By it the Agent undertook to procure applications for life insurance, to collect and pay over premiums when collected, and to otherwise perform such duties in connection with the business of such agency as might be required of him by the Company. He was to devote his entire time to the business of the agency. His compensation was to be in the form of commissions. The contract contained a schedule of such commissions. The schedule was divided into fourteen heads. Twelve of them dealt with first premiums; two of them, with renewals. It is unnecessary to quote these items of the schedule. By their terms he was to receive on certain kinds of policies a commission of 5 per cent. on renewal premiums of the second and nine subsequent years, and no longer. On other classes of policies the commission was to be paid for a shorter time. On some of them the commission was to be as much as 7 per cent. None of these figures are at present material. If he is entitled to commissions on renewal premiums paid after he ceased to be agent, he has a right to an accounting. The amount due him can then be ascertained. The agreement expressly provided that:

"Commissions shall accrue only as the premiums are paid, * * * and only during the continuance of the agreement." "Upon the termination or voluntary surrender of the agency, * * * all commissions under this contract shall cease. Either party hereto may terminate this agreement by giving to the other party notice in writing. * * * The Company may at any time for good and sufficient cause terminate the agreement."

The authorities are overwhelming that such provisions, standing alone, deprive an agent of any right to commissions on renewal premiums paid after the termination of his agency. Stagg v. Insurance Co., 10 Wall. 589, 19 L. Ed. 1038; Heyn v. New York Life Ins. Co., 118 App. Div. 194, 103 N. Y. Supp. 20; Burleson v. Northwestern Mut. Ins. Co., 86 Cal. 342, 24 Pac. 1064; Phœnix Mut. Life Ins. Co. v. Holloway, 51 Conn. 310, 50 Am. Rep. 21; Mutual Benefit Life Ins. Co. v. Charles, 17 Fed. Cas. 1073; Park v. Piedmont Co., 48 Ga. 605; Spaulding v. N. Y. Life Ins. Co., 61 Me. 329; Jacobson v. Connecticut Mut. Life Ins. Co., 61 Minn. 330, 63 N. W. 740; Scott v. Travelers' Ins. Co., 103 Md. 69, 63 Atl. 377; Chase v. N. Y. Life Ins. Co., 188 Mass. 271, 74 N. E. 325; 2 May on Insurance, 576; Mills v. Union Central Life Ins. Co., 77 Miss. 327, 28 South. 954, 78 Am. St. Rep. 522; King v. Raleigh, 100 Mo. App. 1, 70 S. W. 251 (1902); North Carolina Ins. Co. v. Williams, 91 N. C. 69, 49 Am. Rep. 637; Ballard v. Insurance Co., 119 N. C. 187, 25 S. E.

956; Shaw v. Home Life Ins. Co., 49 N. Y. 681; 22 Cyc. 1444; Butler v. N. Y. Life Ins. Co., 45 Wash. 141, 87 Pac. 1119; Moses v. Union Central Life Ins. Co., 4 Wkly. Law Bul. 214; Trimble v. Conn. Mut. Life Ins. Co., 13 Wkly. Law Bul. 109 (Cin. Sup. Ct., 1885).

[2] The Agent has tried to show that by the custom of insurance companies and insurance men the word "commissions," when used alone, does not include commissions upon renewal premiums. The Company says that such evidence is inadmissible. That which has been given, if it were admissible, falls short of proving a general custom. Such evidence cannot be received. Partridge v. Insurance Co., 15 Wall. 579, 21 L. Ed. 229; Park v. Piedmont Co., 48 Ga. 605.

The Agent says that the terms of the agreement above quoted do not stand alone. He points out that it also says:

"When premiums upon policies of the agent are not collected by him, the cost of collecting such premiums shall be deducted from the commissions to be allowed thereon."

He argues that this shows that the agent was not expected to collect all renewal premiums. He contends that the agreement therefore contemplates that the agent shall be entitled to commissions upon renewal premiums paid after he shall have ceased to be agent. That does not follow. Ordinarily, even while agent, he would not collect renewal premiums. They would, as a rule, be paid to the Company or to one of its general agents. Moreover, the agreement goes on to say:

"The commissions on renewal premiums as above, less the cost of collection, subject to the stipulations and limitations herein contained, shall be paid to the said agent for stipulated years, and no longer, provided he shall have written under this contract not less than $150,000 of insurance within one year from the date of this contract on which first year's premiums have been paid to said company, and provided he shall continue to act only as agent for the said company."

He contends that this language is ambiguous. The agreement was prepared by the Company. He invokes the rule that ambiguous phrases shall be construed most strongly against the party who uses them. The sentence might doubtless be differently worded; but it does not seem to raise even an implication that the express language of other portions of the contract already quoted are not to be held applicable to commissions on renewals. Much less does it say that commissions are to be paid on renewal premiums received by the Company after the agency has come to an end.

In New York it is held that, when an agency contract says nothing as to what shall happen after the termination of the agency, the agent is entitled to commissions on renewals thereafter paid. Hercules Mutual Life Ins. Co. v. Brinker, 77 N. Y. 435; Heyn v. New York Mutual Life Ins. Co., supra. An examination of the many cases already cited will show that the general rule of law is to the contrary.

There are a number of cases which hold that where the company, without having the right to terminate the contract, does terminate it, or otherwise break it, the agent may be entitled to commissions on renewals for the unexpired portion of the contract. Wells v. National

Life Ass'n, 99 Fed. 222, 39 C. C. A. 476. 53 L. R. A. 33 (C. C. A. 5); Newcomb v. Imperial Life Ins. Co., 51 Fed. 725 (Cir. Ct. East. Dist. Mo.); Ætna Life Ins. Co. v. Nexsen, 84 Ind. 347, 43 Am. Rep. 91 (1882). These authorities are not in any wise in conflict with those which hold that the right to commissions ceases when the agency rightfully ends. They simply hold that if the company, without having the right to do so, ends the agency, it must make good the loss thereby occasioned to the agent.

In the light of the authorities there is nothing on the face of the contract between the Company and the Agent to suggest that he was to have any commissions on renewal premiums received by the Company after he had voluntarily withdrawn from its service. It is plainly said that he was not to have them. The Agent says, however, that the parties themselves best knew what they meant by the words they used. He has produced 31 monthly statements sent him by the Company or its general agent on its blanks. These statements cover the period from June, 1901, to December, 1903, inclusive. On each of them, except the first, he is credited with commissions on renewal premiums paid after he ceased to be agent. No money was ever paid him in consequence of these statements, nor does it appear that these statements show any to be due him. By the terms of his contract the Company or its general agent advanced him $60 a week. This advance was to be paid back by him out of his commissions. When he left the Company he owed it or its general agent $1,093.02. The total amount of commissions credited to him subsequent to June, 1901, was $1,229.71. At the date of the last statement rendered him there was an apparent balance due him of $136.69; but each of the statements furnished him bore on its face the notice that the collection fee had not been deducted. Whether the collection fee would or would not have exceeded this balance does not appear. For 2½ years after he had left its employ the Company or some of its employés, by sending him these monthly statements, did assume that he had some interest in renewal premiums.

Dr. Skinner, the Ohio general agent, explains that when the Agent left the Company's employ he was indebted to him, as before stated, for $1,093.02. Dr. Skinner claims that under his contract with the Company he was entitled to commissions upon renewal premiums paid upon policies secured by his subagents, of whom the Agent was one; that from the amount of the general agent's commissions was to be deducted the amount paid his subagent. After the Agent had resigned, he, the general agent, was entitled to the full renewal commissions on the policies procured by the Agent. Under such circumstances, instead of demanding payment of the balance of $1,093.02 due him by the Agent, he simply credited against that balance such proportion of his, the general agent's, renewal commissions as would have been payable to the Agent, had the Agent remained in the service of the Company.

If the contract between the Company and the Agent is to receive the construction for which the Company now contends, there was no reason why these credits should have been made. The Company or

its general agent could have called upon the Agent to pay the balance due by him in cash. This was not done. There are some things in the record which suggest that such a demand would at the time have been futile. Apparently for some six months after the indebtedness of the Agent had on the books of the general agent been extinguished, the monthly statements were sent because nobody happened to think to stop sending them. This is not an altogether satisfactory explanation. It shows that somebody, acting for the Company or its general agent, had not the clear-cut view as to what the contract between the Company and the Agent meant which the Company now asserts should have been at all times obvious to everybody. On the other hand, it must be remembered that no money passed in consequence of any of these statements. They were mere bookkeeping entries, or copies of bookkeeping entries. As such they did not necessarily suggest that the matter of the proper construction of the Agent's contract had been considered by officers of the Company of the rank and position entitling them to bind the Company by their interpretation of the contract which the Company had made. The construction now contended for is clearly contrary to the words used in it. The meaning of such words had been clearly defined by the courts long before the contract was made. Under such circumstances the Company cannot be bound to a different interpretation by what was done in this case.

I have treated these statements as in evidence. The Company says they are inadmissible. It objects to them because it says that the plain words of the contract must govern. I have assumed that if the officers of the Company, properly authorized to bind it in such matters, had actually united with the Agent in construing the contract, as the Agent now says that it should be construed, such construction might require serious consideration. I have, however, held that there is no evidence that the statements in question ever came before such officers. While I have admitted them in evidence, I have held that they were not sufficient to sustain the contention in support of which they were offered. Had the Company, through so long a period and at such frequent intervals, done something which from a practical standpoint changed its position or that of the Agent, the Company might not be heard to say that what it allowed its subordinate employés to do was not binding on it; but in point of fact the sending of these statements changed nothing. They affected nobody for good or ill.

The bill must be dismissed, with costs.