## ANDREWS *v.* PUBLIC SAVINGS INSURANCE COMPANY.

[No. 11,666. Filed December 4, 1923.]

1. SPECIFIC PERFORMANCE.—*Contracts.*—*Fraud.*—*Refusal of Enforcement.*—Courts sometimes refuse to enforce contracts on the ground that they are unconscionable and oppressive, when to enforce them would cause a loss to one party wholly disproportionate to the injury of the other party, but such contracts are usually tainted with fraud. p. 539.

2. CONTRACTS.—*Construction.*—Contracts will be construed, if possible, so as to avoid a forfeiture or an unreasonable result. p. 540.

3. INSURANCE. — *Agency Contracts.* — *Termination.* — *Commissions.*—*Construction.*—Under an agency contract with an insurance company, stipulating the commissions to be paid for business secured, *held* that the contract was not ambiguous, and that the agent, on terminating the contract, was not entitled to commissions on first year and renewal premiums on

ordinary life policies where the premiums became due and payable to the company after the termination of the contract. p. 540.

4. INSURANCE.— *Agency Contracts.*— *Construction.*— Under an agency contract with a life insurance company which also conducted an "industrial" branch, such contract providing that the agent should give all his time to the work, "under the control and the instruction of the company," he could not complain if required to give all his time to the industrial branch of the work. p. 542.

From Lake Superior Court; *Charles E. Greenwald,* Judge.

Action by Ora Andrews against Public Savings Insurance Company of America. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*John G. Capouch,* for appellant.

*Korbly & McNutt* and *Ibach, Gavit, Stinson & Gavit,* for appellee.

REMY, C. J.—On March 1, 1920, appellee, an insurance company doing a life insurance business, including a branch of the business commonly designated as industrial, entered into a written contract with appellant by the terms of which appellant was employed as the representative of the company to solicit insurance and supervise agencies in what is termed the "Gary District," his work to be "under the control and instructions of the company." Under the contract, appellant was to give all of his time to the work, and was to receive for his services in soliciting industrial insurance and supervising that part of the business the sum of $30 per week, and in addition a special salary equal to two times the aggregate weekly net increase of the collectible weekly debit of appellant and the agents working under him; and for what is termed in the contract "ordinary life insurance," appellant was to receive on the business secured by him a stated per cent.

of the premiums paid for the first year, and a certain per cent. of the renewal premiums paid in second and subsequent years. The contract contained among other things the following provisions:

> "It is hereby further agreed that the company shall be at liberty to terminate this agreement without previous notice, and   *   *   *   if this agreement and the employment thereunder shall be terminated by either party for any cause whatsoever, by resignation, dismissal, death or otherwise, all moneys which the superintendent shall have then received from the company for services performed by him under this agreement, and the compensation on account of ordinary premiums paid to the company in cash which shall then have been paid to the superintendent, together with the amount then due him under this agreement, shall be in full settlement of all claims and demands upon the company in favor of the superintendent under this agreement, and for his service up to that time in any capacity, and the further salary or compensation which a continuance of his superintendency might have secured to him shall be waived and forfeited, it being agreed that he shall have no claim on the compensation on the balance of first year premiums on policies issued through him remaining unpaid at the cancellation of this agreement."

Appellant entered upon the performance of the contract on the date of its execution, and continued in such employment until May 22, 1920, when he resigned. This action is by appellant to recover commissions alleged to be due him on first year and renewal premiums on ordinary life policies written by him, which premiums became due and payable to the company after the termination of the contract. Whether appellant, under the contract, had a right to these commissions is the question presented by this appeal. It is urged by appellant that the terms of the contract, in so far as they provide that a termination

thereof releases appellee from the payment of renewal premiums and from the payment of commissions on first year premiums not due, are harsh and oppressive, and therefore unenforceable; and that the contract must be so construed as to entitle appellant to such premiums and commissions. Courts sometimes refuse to enforce contracts on the ground that they are unconscionable and oppressive, when to enforce them would cause a loss to one party wholly disproportionate to the injury to the other party. *Kelley* v. *Caplice* (1880), 23 Kans. 474, 33 Am. Rep. 179; *Hough* v. *Hunt* (1826), 2 Ohio 495, 15 Am. Dec. 569. See, also, *Schnell* v. *Nell* (1861), 17 Ind. 29, 79 Am. Dec. 453; *Marshall* v. *Billingsly* (1855), 7 Ind. 250. Such contracts are usually tainted with fraud. The principle underlying the decisions, where the courts have refused to enforce contracts on the ground that they are unconscionable and oppressive, has no application to the case at bar.

It is elementary that when a contract is ambiguous, it will be construed, if possible, so as to avoid a forfeiture or an unreasonable result. *Franklin Life Ins. Co.* v. *Wallace, Admr.* (1884), 93 Ind. 7; *Equitable Loan, etc., Co.* v. *Waring* (1903), 117 Ga. 599, 44 S. E. 320, 62 L. R. A. 93, 97 Am. St. 177. There is, however, no ambiguity in the contract under consideration. What was intended by the parties is not in doubt. Appellant was to act as the local superintendent of the company of a certain district, was to give all his time to the service, and was to work under the direction of the company. The commissions to be paid were in all respects definitely fixed. The parties by their contract specifically provided that upon the termination of the agency for any cause the money which had then been received from the company by appellant as superintendent, and the amount then due him, "shall be in full of all claims and demands upon the com-

pany," and that all further compensation which a continuation of the agency might have secured to appellant, was to be waived by him; "it being agreed that he shall have no claim on the compensation on the balance of first-year premiums on policies issued through him remaining unpaid at the cancellation of this agreement." It will be seen that appellant by the contract waives or forfeits no compensation that is due him at the time the contract may be terminated. The parties, as they had a right to do in such a contract, limited the compensation to be paid for soliciting and writing ordinary life insurance to commissions or premiums, first year and renewal, as might have been paid, or had become due, during the continuance of the agency. The provision of the contract limiting compensation to premiums that had been paid, or were due appellant, at the time the agency was terminated is a reasonable provision. As was said by the Missouri Court of Appeals in considering a case very similar to the case at bar: "The courts in construing agreements like the one we have before us, proceed on the notion that the compensation to be received by the agent from year to year through commissions or renewal premiums, is associated with the continuance of his agency and is partly earned by service subsequent to the procurement of the risk not solely by its procurement; the purpose being to bind him to steady work in behalf of the company." *King* v. *Raleigh* (1902), 100 Mo. App. 1, 70 S. W. 251. It is to the interest of an insurance company to have contracts which will induce its agents to continue with their work; and such a contract, not infrequently, is best for the agent. We hold that under the contract appellant was not entitled to commissions on first year premiums and renewal premiums on ordinary life policies, where the premiums became due and payable to the company after the termination of the contract.

*Stagg* v. *Connecticut Mutual, etc., Co.* (1871), 10 Wall.
589, 19 L. Ed. 1038; *Jacobson* v. *Connecticut Mut., etc.,
Co.* (1895), 61 Minn. 330, 63 N. W. 740; *Locher* v.
*New York Life Ins. Co.* (1919), 200 Mo. App. 659, 208
S. W. 862; *Scott* v. *Travellers' Ins. Co.* (1906), 103 Md.
69, 63 Atl. 377, 7 Ann. Cas. 1166; *Dodson* v. *New York
Life Ins. Co.* (1908), 36 Pa. Super. Ct. 551; *Aldrich* v.
*New York Life Ins. Co.* (1907), 121 App. Div. 18, 105
N. Y. Supp. 493; *Walker* v. *John Hancock Ins. Co.*
(1910), 80 N. J. Law 342, 79 Atl. 354, 35 L. R. A. (N.
S.) 153, Ann. Cas. 1912A 526.

Under the contract which provided that appellant, as
local superintendent of appellee company, should work
"under the control and instruction of the com-
4.   pany," appellant could not complain if required
to give all of his time to the industrial branch of
the company's business.

Affirmed.